JAMES W. FLYNN, TREASURER, ETC., V. STANLEY W. TURNER, AUDITOR GENERAL.

*State funds—Appropriation—Mandamus*

*Mandamus* will not lie to compel the Auditor General to draw a warrant in excess of the $125,000 appropriated for the World's Fair exhibit, because of the covering into the State treasury of the money received on the sale of the Michigan building and other State property, as required by the appropriation act; and, if the exigencies of the case or the misapprehension of the Board of World's Fair Managers have led to the attempted expenditure of a further sum than that appropriated, it will remain for the Legislature to deal with the question of its payment.

*Mandamus.*    Argued    February    1,    1894.    Denied February 12, 1894.

Relator applied for *mandamus* to compel respondent to

draw his warrant on the State treasury for $100. The facts are stated in the opinion.

*Mark W. Stevens,* for relator.

*A. A. Ellis,* Attorney General, for respondent.

HOOKER, J.   By Act No. 188, Laws of 1891, the sum of $100,000 was appropriated for the purpose of making an exhibit of the manufactures and products of the State of Michigan at the World's Columbian Exposition, which sum was increased by an additional appropriation of $25,000, by Act No. 50, Laws of 1893.   The former act, in accordance with which these funds were to be expended, provided for a Board of World's Fair Managers, which board was authorized, under certain restrictions, to draw the money from the State treasury, upon the warrant of the Auditor General; and it was provided—

" That in no event or account shall the State of Michigan, nor the said board created by this act, be held responsible or be made liable for any sum in excess of the amount appropriated by this act," etc.

The act authorized the board to expend from said fund an amount sufficient to erect an adequate " State administration building " upon the exposition grounds, which was done.

Upon the close of the Fair, the board found that, of the fund of $125,000, about $1,000 remained in its hands unexpended, and that there were outstanding bills to the amount of about $1,600, which, together with some expenses in the preparation of an " Historical Report of Michigan at the World's Fair," it was the board's expectation to pay from the amount on hand, viz., $1,000, of the original fund appropriated, and any moneys that should be realized from the sale of the building aforesaid and its furniture,

which the board contemplated making. Upon the sale of the building and other property belonging to the State, the board received about $3,600, of which sum $100 was paid into the State treasury. The Auditor General having refused to draw a warrant for said sum of $100, an application for a *mandamus* to compel it is made by the board.

The act authorizes the Auditor General to issue warrants to the extent of the fund appropriated, viz., $125,000, but contains no authority to exceed that sum. Section 8 permits the sale of the buildings and property of the State by the board, but requires that the money received therefor shall be deposited in the State treasury, while, as shown, section 7 expressly provides that the State shall not be liable beyond $125,000. If the exigencies of the case or the misapprehension of the board have led to the attempted expenditure of a further sum, it will remain for the Legislature to deal with the question of its payment, which is beyond the power of the board or the Court to provide for.

The application for *mandamus* will be denied.

The answer of the Auditor General asks a *mandamus* requiring the board to pay to the State Treasurer the balance in its hands received from the sale of State property. As section 8 allows six months from the close of the Fair within which the board may settle its accounts with the treasurer, we think such writ may not be necessary.

The other Justices concurred.